**Zella Jamison DeGAUGH, Appellant,**

**v.**

**John H. JAMISON, Administrator, Appellee.**

**No. 15107.**

Court of Civil Appeals of Texas.

Houston.

Sept. 28, 1967.

Rehearing Denied Oct. 19, 1967.

Fountain, Cox & Gaines, James A. Pakenham, Houston, for appellant.

Sam Lee, Angleton, Fred F. Abbey, Houston, for appellee.

BELL, Chief Justice.

This case involves an appeal from a judgment approving the final account of the administrator of the estates of Bert M. Jamison, Sr. and his wife, Kate H. Jamison.

Mr. and Mrs. Bert M. Jamison, Sr. were killed in an automobile accident on April 14, 1961. Each had executed a will leaving all of their respective properties to the other and appointing the other as independent executor or executrix of the other's estate. They left three children, Bert M. Jamison, Jr., the appellant and the appellee. Bert, Jr. and appellant executed waivers of their right to be appointed as representatives of the estates. John M. Jamison offered each will for probate and asked to be appointed Administrator with Will Annexed. On July 14, 1961, he was appointed Administrator for each estate. Of course, each estate was separately numbered and administered, but since all of the property, except for an insignificant amount, was community property, as were the debts of the estates, the various applications to the Probate Court for action and the orders on such applications were of the same nature though separately filed and approved.

Mr. and Mrs. Jamison lived on their ranch. Mr. Jamison was a rancher. (When we use the names "Mr." and/or "Mrs. Jamison," we refer to Mr. and/or Mrs. Bert M. Jamison, Sr.). The Application for appointment as Administrator also asked for authority to continue the ranching operation and the order appointing appellee Administrator granted such authority. On September 1, 1961 the Administrator filed an application in each estate asking that an administrator's fee for managing the ranch be allowed commencing August 1, 1961. The amount from each estate was to be $500.00 monthly. The same application asked that appellant be paid monthly from each estate the sum of $250.00 for accounting and bookkeeping services pertaining to the ranch operations.

On April 18, 1962, the Administrator filed an application to sell a number of head of cattle. (We use the term "cattle" to include cows, bulls and calves). On the day appellant filed opposition to any sale. However, on April 19, 1962, the attorney for appellant wrote the attorney for appellee enclosing an order to be signed

by the probate judge which authorized the sale. The letter stated, "You are probably cognizant of the fact that Zella and Johnny agreed on the sale as reflected by the enclosed order. Please approve this order and return it either to me or to Judge Arnold."

The order was approved April 19, 1962. We here note that subsequent annual accounts reflected that some of the cattle had been sold before the date of the order authorizing the sale. However, appellant's First Annual Account covering the period from April 14, 1961, through June 30, 1962, was filed July 11, 1962, and it itemized the sale of cattle made during such period, the first sale being dated May 22, 1961. There was no contest filed and the account was approved by the court July 23, 1962.

On January 3, 1963, a report was made of the sale of cattle from April 19, 1962, through November 12, 1962. The court approved the sale on the same day.

From the above we take it that the sales made during 1961 were not specifically authorized by court order, but they were reported in the First Annual Account and were approved by the court.

On December 4, 1962, appellee filed an application for authority to withdraw deposits and make disbursements in accordance with a voluntary partition agreement between him and appellant. Bert Jamison, Jr., had previously conveyed all of his interest in the estates to appellant and appellee, except for the minerals. The substance of the allegations was that they had agreed to divide the estates, the Administrator to retain only an amount sufficient to pay estate and inheritance taxes and costs of administration, including attorney's fees. Too, it asked that the management and bookkeeping fees be terminated as of October, 1962. We note that because of the value of each estate, the Administrator filed a bond of $125,000.00 in each. This application for partition asked that the bond be reduced to $5,000.00 for each estate. The Administra-

tor waived any administrator's fees. An order was signed by the judge granting the authority and other relief prayed for. We particularly note that the order was "approved as to form and entry requested." Then appeared the signatures of the attorneys for both appellant and appellee.

Thereafter annual accounts were filed for the years ending June 30, 1963, and June 30, 1964. These were short accountings. The evidence reflects that there was very little property left in administration because of the voluntary partition authorized and carried out by agreement December 5, 1962. Particularly we note that appellant, with her expert advisors and attorney present, had been given and accepted the cattle partitioned. Too, this occurred after the cattle sales made in connection with the operation of the ranch.

On July 13, 1965, appellee filed his final account, alleging there was no need for further administration and asked for his discharge. In the application the annual accounts were incorporated by reference, as authorized by Texas Probate Code Section 408, V.A.T.S. On the account is a certificate by appellee's attorney that a copy had been delivered to appellant's attorney on July 9, 1965. A supplement to the final account was filed February 9, 1966, showing that since the filing of the final account all debts, taxes and expenses had been approved by the court pursuant to agreement between appellant and appellee on December 14, 1965. Closing of the estates and discharge of the Administrator were asked for. On the same day the court entered its order approving the account, closing the estates and discharging the Administrator. This order was "approved as to form and entry requested" by the attorney for appellant and the Administrator. No contest of the application was made by anyone.

We wish to note that appellant nowhere complains of the want of any statutory notice being properly issued and served. Also, each court order recites the giving and service of notice.

On March 10, 1966, appellant, having obtained new counsel, filed her motion to set aside the order of February 9, 1966, approving the final account. It is lengthy and we think it not necessary to notice the allegations other than the charge that in making the various cattle sales the Administrator had commingled cattle belonging to the estates with cattle belonging to other people. Probably we should also notice the allegation that the approval on her behalf of the final account was through misunderstanding of her desire and direction and was not intended to be authorized by her and was not in fact authorized by her. In any event, appellant alleges that the court still has jurisdiction over the order and can withdraw it, which she requests be done and that the account be audited. She in effect asks that her approval be withdrawn. In general terms she alleges that she was ill and appellee took advantage of her and her agreement to partition the estate was void. She complains appellee induced her to sign a deed in July, 1961, conveying the interest she obtained from Bert, Jr., and the partition was based upon appellee's interest in part obtained to her disadvantage by said deed. She specifically prayed that the order be set aside and she be given time to file exceptions to the account.

On March 10, 1966, the court, without notice to appellee, set aside the orders of February 9.

Though the court had thus on March 10 set aside his orders approving the final accounts, appellee on March 25, 1966 filed an answer to appellant's motion, the answer consisting of exceptions and a general denial.

It is our view that the effect of the court's order of March 10 was to grant a new trial and the final accounts remained on the docket to be acted on. The court still had jurisdiction over its order and could have set the order aside on its own motion.

On March 25, 1966, the appellee also filed what he denominated a "Bill of Review". In it he prayed that the court set aside its order of March 10 and reinstate its order of February 9. The pleading is lengthy. Its substance insofar as is material here is that appellant was the bookkeeper for the ranching operations and was at all times familiar with the manner in which the operations were carried on, including the manner of the sale of the cattle. She furnished to appellee much of the information to appellee and his counsel that went into his various reports to the court. Appellant or her counsel were furnished with copies of all accounts filed and she never made or filed any objections. Particularly the agreed voluntary partition of December, 1962 was alleged and it was asserted that she had received her share of the estate and had made no offer to return any of it. By reason of her knowledge of the affairs of the ranch operations and yet never having made any complaint until her motion of March 10, 1966, she had consented to the acts of appellee and had ratified his conduct and was estopped from questioning the final account.

Actually it appears to us that the real difference between the parties is over a deed of July 14, 1961, from appellant to appellee conveying the interest she had obtained from Bert, Jr. to appellee. Such deed does not appear in the record, but is referred to in the pleadings. Its validity is the subject of another suit.

We do not find in the record any pleading by appellant denominated Exceptions to the Final Accounts, but her only pleading was one we have noticed asking that the order of February 9, 1966, be set aside so she could file exceptions. It, however, did allege an intermingling of the estates' cattle with those belonging to other persons, and in both trial courts the parties seem to have treated this as an opposition or exception to the accounts.

On September 22, 1966, the County Court rendered judgment granting the bill of re-

view, reinstating its order of February 9, 1966, and approving the final accounts, closing the estates, and discharging the administrator and his sureties.

Appellant appealed to the District Court and there the cases were consolidated. The District Court, on trial without a jury, rendered judgment approving the accounts, closing the estates and discharging the administrator and his sureties.

Trial in the District Court was limited, by agreement, as to whether the final accounts should be approved because the administrator had allegedly commingled estate cattle with cattle belonging to other persons and sold such of them as were authorized to be sold along with other persons' cattle without segregating them.

The District Court made his findings of fact and conclusions of law, only some of which we need notice. He found that authority to sell the cattle had been obtained as we have above discussed and that appellant received copies of the application and the order of the court granting authority. It also found the report of the sales was made January 3, 1963; that appellant received a copy of the report and the order of the court confirming such sales. It found that all sales were made legally and in the manner required by law and for a sufficient consideration. No appeal was taken from any orders in connection with the sale of livestock. Too, it found appellant had received or was properly credited with her proportionate interest in the livestock sold. It found that appellant, accompanied by her livestock expert and attorney on December 5, 1962, met appellee and they divided the remaining cattle; that appellant received her proportionate share and made no objection that she did not receive her proportionate share. Further, the court found that appellee's annual accounts filed July 11, 1962 and January 2, 1964 fully reported the sale of the livestock, the money received therefor and the disbursement thereof. Appellant and her attorneys received copies of said accounts and filed no objections and the accounts were approved. Findings were also made concerning the filing of the final accounts; that a copy was furnished appellant's counsel and he approved the orders entered by the court February 9, 1966. Too, it was found appellant had notice of the final accounts. It was found that appellee acted with propriety and legally in all matters affecting the estates and did not act negligently or carelessly. All sales of cattle and livestock were in a manner provided by law and all orders and reports required by law were obtained and complied with.

The court concluded in his conclusions of law that the County Court's order in each estate was in all things valid and legal and should have been entered. Further, it concluded that there was no negligence or carelessness on the part of appellee and that all affairs of said estate were handled with dispatch, prudence and in accordance with good business and good business practices. It was found that appellant had failed to prove any errors, mistakes, fraud or negligence in handling the affairs of the estates, including the sale of cattle and livestock. The court specifically found that appellant approved the sale of the cattle and approved the distribution of the assets received from the sale of the cattle and division of the remainder of the cattle and she was estopped as a matter of law from questioning the sale and distribution.

On trial in the District Court, appellee placed in evidence the various accounts and the County Court's orders approving them, the application for voluntary partition and the agreed order, and all other applications made by appellee and the County Court's orders approving them, which we have previously set out. On trial in the District Court only appellee and the deputy clerk of the District Court were witnesses. The clerk was used only to establish the authenticity of court records. Appellee was the only witness as to how the sales of estate cattle were conducted.

Appellee was a rancher and lived with his wife and daughter on the ranch with his mother and father. The mother and father engaged extensively in the cattle operation. He helped them in running the ranch. Appellant worked at a bank in Angleton and was an accountant and had been for many years. Appellee furnished a copy of each annual account to appellant or her attorney.

Appellee's cattle were pastured on the ranch with the estate cattle. He and his wife each had a separate brand, as did his mother and father. The cattle, except for the calves, were branded so the person to whom they belonged could be ascertained. The cattle were not all sold at one time, but there were probably about 20 sales. Appellee testified to the long-standing manner in which cattle in the Gulf Coast area were sold. The cattle were taken to the livestock commission merchant in trucks. If one owner did not have a complete load, some other person's cattle would be used to complete the load. The cattle mixed would be of about the same quality and weight. There might be some slight disparity in weight between the individual cattle sold in a lot. While the quality of the cattle might differ some, the price would vary only 3 or 4 cents a pound. All cattle sold were range cattle and no high quality ones were sold. Through the period of the sales the market remained steady. This manner of sale was not only commonly followed by people generally in the area, but had been followed by appellee and Mr. and Mrs. Jamison during their lifetime. Too, it had been followed by appellee's grandfather.

When the cattle were sold, the total sales price would be taken, less trucking charges and sales commission, and divided among the owners in proportion to the number of head in the lot sold that belonged to each owner. For instance, if a lot of 40 cows sold for $4,000.00, less the trucking and sales charges, this amount would be divided by 40 to get the per-head price. This latter figure would be multiplied by the number of head belonging to each owner and the resulting figure would be the amount received by a particular owner.

In the annual account covering the period for July 14, 1961 through June 30, 1962, a copy of which was furnished appellant's attorney, several sales were reported. It is most interesting to note how such sales were reported. The account shows a sale October 2, 1961. It was reported in this manner: "Port City Stockyards, sale of 39 calves belonging to Estates ($2618.47) and 14 belong to John H. Jamison and Mrs. John H. Jamison." Then followed a listing of the total sales price. Under the expenditures is listed reimbursement to appellee and wife in this manner: "October 5 John H. Jamison, reimbursement for 10 calves sold *with* (emphasis ours unless otherwise noted) Estate calves to Port City Stockyards October 2, check for entire group deposited to Estate account $671.40." The same is shown for Mrs. Jamison except 4 of her calves were sold. The same account shows two other sales of estate cattle with cattle of appellee and his wife. The disbursements showed reimbursement for cattle belonging to them for the cattle sold *with* estate cattle. Also in the disbursements shown there are two reimbursements to Charley McDonald for calves sold *with* estate cattle, though we do not find a report of the sales reflects any McDonald calves. Appellee testified he made only one or two sales for McDonald.

The account was filed July 11, 1962, and was approved by the court July 23, 1962.

After this, on December 5, 1962, the application for voluntary partition was approved by the county judge, the order being one approved by appellant's attorney with the request that it be entered.

During this time appellant was the bookkeeper for the ranching operations. So far as the record reflects, we hear no complaint from appellant until she filed her motion of March 10, 1966. In the meantime she had use of the property she received under the agreed voluntary parti-

tion, including proceeds from the sales of cattle theretofore made, all of which had been reported as we have above detailed. We do not recall anywhere in any pleading filed by her that she claimed she had no knowledge of the manner of the sales, though she does in her pleading of March 10, 1966, allege the fact of intermingling.

Appellant in her brief relies on the principle applicable to trustees and other fiduciaries, to the effect that a fiduciary's individual property shall not be commingled with that of the beneficiary, and if he does commingle the properties the burden is on the fiduciary to trace and identify the beneficiary's property. She relies, other than general fiduciary cases, on Sections 32 and 37 of the Probate Code. The first cited section establishes the common law as governing the rights, powers and duties of an administrator where not in conflict with the Probate Code. The second cited section deals with the vesting of title in the heirs, legatees and devisees, subject to administration where necessary and provides the personal representative shall hold the estate in trust to be disposed of in accordance with law.

Under the peculiar facts of this case, we do not believe such rule if applicable generally is controlling here.

■ There is no doubt that the estate cattle, in some instances, were commingled with those belonging to others and sold, as was customary. However, we are of the view that the record sustains the inference that appellant consented to such manner of sale and that by her conduct as detailed above she ratified such sales and is now estopped to question them.

An analysis of the evidence above set out shows that appellant was bookkeeper for the ranching operations, which were authorized by the court pursuant to Section 238 of the Probate Code. Appellee's testimony shows appellant helped prepare much of the information that went into the reports to the County Court. She or her attorney were furnished copies of all of the reports. As specified above, the first annual account, which detailed practically every sale of cattle, reflected a mingling of the cattle, yet appellant raised no objection. Then a few months following such report, appellee asked for authority to partition the estate pursuant to an agreement between appellee and appellant. This included the division of the proceeds from the cattle sales, of which she complained for the first time about three years later. The authority for the appellee to partition the estate was granted pursuant to an order expressly agreed to by appellant's attorney, and she nowhere complains of such order. Also, pursuant to such order of authority, she and appellee divided the remaining cattle as well as the other assets of the estate. She makes no complaint of the partition, apart from an apparent assertion that a deed she gave to appellee to the interest she had acquired on July, 1961 from her brother Bert is invalid.

We are cited no authorities and have found none on the conclusions we have expressed, but on principle we feel they are correct.

■ We do not, however, hold that the annual accounts that were approved constitute res adjudicata. Section 408, Texas Probate Code, contemplates they be brought forward by reference in the final account and the whole of the accounts may be ordered restated if the facts warrant such.

■ We do not pass on the validity of the alleged deed from appellant to appellee conveying the interest she got from Bert, Jr. The deed is not in the record and is merely alleged in some pleading. The Probate Court had no jurisdiction to pass on its validity. Its existence and validity were not material to the limited issues on which the case was tried below and is submitted here. The findings of the trial court with regard to such deed were really not supported by evidence, but only pleading. In any event they are not material to our de-

cision, and our decision is without prejudice to the pending suit contesting the validity of said deed or any rights that might flow from a cancellation of such deed.

Affirmed.